theft accomplished by a series of short-change transactions.

*Id.* at 1192.

We find the rationale of *Williams,* the Model Penal Code (Comment to § 223.1(2)), *Harrison* and *Warner* applicable to the instant case. Accordingly, we find the victim's money was not "taken from [her] person" within the meaning of section 3903 and therefore appellant's conduct did not involve the "special potentialities for physical violence or alarm associated with [such a] taking...." Model Penal Code, § 223.1(2), Comment at p. 148; *see also Williams, supra* at 496–97, 567 A.2d at 713. Therefore, appellant's offense constituted a misdemeanor of the second degree under section 3903(b)(1) and the trial court's imposition of sentence on a first degree misdemeanor was in error.[6]

Based on the foregoing, we vacate the February 22, 1995 judgment of sentence and remand for resentencing pursuant to 18 Pa. C.S. § 1104(2) (relating to sentencing for second degree misdemeanors).

Judgment of sentence vacated and case remanded.

Jurisdiction relinquished.

CAVANAUGH, J., concurs in the result.

Thomas V. **FOSTER**

v.

**BOARD OF SCHOOL DIRECTORS OF KEYSTONE OAKS SCHOOL DISTRICT and Keystone Oaks School District, Appellants.**

Commonwealth Court of Pennsylvania.

Argued May 14, 1996.

Decided June 21, 1996.

Reargument Denied Aug. 6, 1996.

---

**6.** The Commonwealth also argues, in a footnote, that even if the victim's money was not taken from her person, appellant is nonetheless chargeable with a first degree misdemeanor because the money was taken "in breach of a fiduciary obligation" within the meaning of section 3903(b). (Appellee's brief at 15, n. 8.) Initially, we are aware of no authority, nor is any offered by the Commonwealth, supporting this novel construc-

tion of section 3903. Further, neither version of the facts implies the existence of a fiduciary relationship. Under the victim's version, which the Commonwealth has urged throughout this appeal, the robbery was conducted at gunpoint. Under appellant's version, the victim accompanied appellant in order to collec: $50, not because she trusted appellant. Hence, we reject the Commonwealth's argument.

Carl P. Beard, for Appellants.

Ronald N. Watzman, for Appellee.

Before COLINS, President Judge, FRIEDMAN, J., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

This is an appeal by the Board of School Directors of Keystone Oaks School District (School Board) and Keystone Oaks School District[1] (District) from an order of the Court of Common Pleas of Allegheny County (trial court) entered the 23rd day of October 1995 which, *inter alia,* vacated the adjudication of the School Board dismissing Thomas V. Foster (Foster) from his administrative position as Director of Data Processing and Facilities of the District and directing that he be reinstated to said position.[2]

The undisputed relevant facts herein are as follows. On August 31, 1994, the District sent a letter to Foster notifying him that pursuant to Section 514 of the Public School Code, 24 P.S. § 5–514, the District directed he be removed and dismissed from his employment and that he had a right to a hearing. Foster was further notified in said letter that he was suspended without pay pending final School Board action. The letter then set forth the following:

> You are being charged by the District with intemperance, neglect of duty and improper conduct in violation of Section 514 of the Public School Code as summarized as follows:

> That you, since the beginning of the current year, have, in concert with an elected District official, engaged in a concerted, systematic scheme, while on school time and as part of your official activities, to seek the dismissal of Dr. Chet Kent, the District's current Superintendent of Schools.

> That you, as part of this scheme, have submitted written reports to the District alleging that Dr. Kent was spreading rumors about your personal relationship with a Board member which were untrue when, in fact, it was disclosed, witnessed and recorded by conventional photograph techniques as well as videotape, that you and said Board member

1. Keystone Oaks is a school district of the third class. *See* Section 202 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 2–202. The School Board consists of nine members, of which five would be a quorum. *See* Section 422 of the Public School Code, 24 P.S. § 4–422.

2. The order specifically provided as follows:
   1. The adjudication of the Petitioner, Thomas V. Foster, is hereby vacated and the Respondents are directed to reinstate him forthwith, with back pay from December 21, 1994 (the date of the illegal discharge) to the date of compliance with this Order.
   2. In the event Respondent wishes to discharge Petitioner for conduct for which he was suspended without pay on August 31, 1994, a hearing must be scheduled within 10 days of the date hereof to take place before the Keystone Oaks School District Board of School Directors within 30 days of the date hereof, at which time any School Director may be asked or may offer to recuse (with the reasons in support of recusal being fully stated on the record), with any request for subpoenas by or on behalf of Petitioner being promptly honored.
   3. In default of either notice within 10 days or the hearing within 30 days, as described in paragraph 2 above, the remaining back pay due Petitioner for the period of his suspension, August 31, 1994 through December 20, 1994, shall be paid as promptly as possible but not later than 60 days from the date of this Order.
   4. In addition to court costs, Respondents shall pay Petitioner's reasonable counsel fees and expenses in connection with the instant Petition, the amount of said payment to be determined by the undersigned after a hearing to be set when any appeals hereof are concluded.

were meeting, during regular school hours, at the Galleria Mall parking garage and engaging in sexual activities in the back of a minivan on June 30, at 12:25 p.m., July 8, 1994 between 1:33 and 2:22 p.m., July 13, 1994 between 11:30 a.m. and 12:31 p.m., July 19, 1994 between 11:18 a.m. and 12:20 p.m., July 24 between 11:15 a.m. and 12:09 p.m., and August 9, 1994 between 10:53 and 11:35. At all times, it was also observed that before or after engaging in sexual activities, you and said Board member reviewed and exchanged documents. In that these sexual activities in which you engaged were clearly recorded and witnessed in a public setting and during normal business hours of the District, the District views each and every incident in the Galleria parking lot area as action evidencing intemperance, neglect of duty and improper conduct.

(R.R. 11a–12a.)

Thereafter, Foster demanded a hearing, which was originally scheduled for October 3–4, 1994. The hearing was continued by agreement of counsel for the parties pending an attempt by the parties to devise a proceeding for resolution of the charges other than by the School Board. The parties attempted to negotiate an arbitration procedure where the matter would be referred to a neutral arbitrator for decision. R.R. 40a–48a. The negotiations were unsuccessful.[3]

Thereafter, a special meeting was held by the School Board at which the Board took the following action.

RESOLVED, because of the inability of the Board to have an unbiased hearing with respect to the termination of Thomas Foster, and because Thomas Foster has not accepted the arbitration option as presented to him by the Board which delegated the final decision as to whether Mr. Foster should be terminated to a neutral arbitrator, the Board, pursuant to Policy

No. 316 of the District policy manual which designates the position of Director of Data Processing and Facilities as a non-tenured administrative position, Section 514 of the Public School Code, and District Policy No. 006, section (9)(c)(18), hereby terminates Thomas Foster for intemperance, neglect of duty and other improper conduct including immorality based on the following actions:

(a) engaging in misrepresentations and lying to the Board about his relationship with a Board member on several occasions from January 1994 through August 1994, including but not limited to the following occasions: January 10, 1994; January 28, 1994; February 4, 1994; February 18, 1994; March 22, 1994; July 18, 1994; July 29, 1994; and

(b) engaging in a sexual affair with a Board member in an open public place during regular school hours during the time period from June 30, 1994 to August 9, 1994 on at least the following occasions: June 30.1994 12:25 p.m. to 1:45 p.m.; July 8, 1994 between 1:33 and 2:33 p.m.; July 19, 1994 between 11:18 a.m. and 12:20 p.m., July 27 between 11:15 a.m. and 12:09 p.m.; and August 9, 1994 between 10:53 a.m. and 11:53 a.m.

Mrs. Lyle read the following public statement:

A resolution to terminate Mr. Foster in the absence of a Board hearing has been placed on the agenda this evening because of the necessity of taking some action to finally resolve the Foster situation. Because of the immediate and extensive involvement of Board members in the Foster matter, this Board concluded several months ago that it is not in a position to conduct a fair hearing pursuant to Section 514 of the Public School Code with respect to Mr. Foster's termination. In light of such recognition, negotiations as to how to

---

3. A December 19, 1994 letter from counsel for the District to counsel for Foster advised that if an acceptable arbitration procedure was not reached by the next day, the Board would act. Specifically, the District advised "If this response is acceptable to you and I hear from you by noon on December 20, 1994, I will draft a final agreement. Such agreement will also include that an arbitrator will be selected pursuant to the rules of the American Arbitration Association. If I do not hear from you by tomorrow at noon, the Board will take action as appropriate on December 20, 1994." R.R. 48a.

provide Mr. Foster with a fair hearing took place with Mr. Foster's attorney. During the course of such negotiations, the Board agreed to delegate its decision making power with respect to whether Mr. Foster had engaged in conduct which formed a basis for termination under the Public School Code to a neutral arbitrator and offered an agreement setting forth such option to Mr. Foster's attorney on November 17, 1994. The options as presented by the Board were not acceptable to Mr. Foster's attorney. In light of this, we have no choice but to move this matter forward at this time by taking Board action to terminate Mr. Foster. I have recommended that such action be taken in the absence of a hearing because a hearing before a biased Board is likely to be overturned on appeal and therefore constitutes a waste of time for both Mr. Foster and for this Board.

. . .

A roll call vote was taken on the motion to terminate.[4]

R.R. 174a–175a.

Pursuant to the foregoing, the President of the School Board, by letter dated December 21, 1994, notified Foster that his employment with the District was terminated effective December 21, 1994. The letter states in relevant part as follows:

The purpose of this letter is to inform you that at last night's meeting of the Board of School Directors of the Keystone Oaks School District, the Board voted to terminate your employment with the District by a vote of 5–1 with 2 members abstaining. Such termination is effective December 21, 1994.

R.R. 13a.

The record is devoid of any prior notice to Foster that the School Board would consider his dismissal from his position with the District at a meeting to be held on December 20, 1994.

On January 4, 1995, Foster filed a petition in the trial court alleging, *inter alia*, that, notwithstanding his request for a hearing, the School Board "on December 20, 1994 without a hearing discharged petitioner by a vote of 5 to 1...." Foster's request for relief was that he be reinstated with full back pay, seniority and benefits and that a Master be appointed to conduct public hearings concerning Foster's suspension and discharge, and to make recommendations of findings of fact and conclusions of law to the trial court.

The District, in its answer to Foster's petition, admits that after Foster, by his counsel, rejected a proposed agreement to resolve the matter without participation by the School Board, "the Board took action to terminate petitioner effective December 21, 1994 by a vote of 5 to 1". The District requested that the trial court conduct a *de novo* hearing with respect to the issue of whether the School Board had grounds to terminate Foster from his employment and that, after conducting such a hearing, the trial court upheld the decision of the School Board to terminate Foster from his employment.

The Public School Code, Section 514, provides:

The board of school directors in any school district, except as herein otherwise provided, shall after due notice, giving the reasons therefor, and after hearing if demanded, have the right at any time to remove any of its officers, employes, or appointees for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other improper conduct.

Additionally, Section 553 of the Administrative Agency Law, 2 Pa.C.S. § 553, provides:

No adjudication of a local agency[5] shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard....

It is patently clear that Foster neither received notice of the December 20, 1994 meet-

---

4. Five members of the Board voted "yes", one voted "no", and two members refused to participate in the vote. R.R. 175a.

5. We have previously recognized a school district as a local agency. *Sergi v. School District of Pittsburgh,* 28 Pa.Cmwlth. 576, 368 A.2d 1359 (1977).

ing nor had a hearing on the charges lodged against him prior to his dismissal.

 The February 10, 1995 minutes of the December 20, 1994 Special Meeting of the Keystone Oaks Board of School Directors indicate the Board did not hold the requisite hearing because "of the inability of the Board to have an unbiased hearing with respect to the termination of Thomas Foster". However, a Board cannot simply deem itself "biased" and thus avoid the required hearing. A hearing must be scheduled first, to determine on the record and before the taking of testimony, whether the proceeding before the Board would be impartial.[6] Only then would bias or impartiality, when established on record, be a mechanism for an alternate resolution process other than a hearing by the Board. As no such record was made in this matter, and as the requisite notice and hearing were not provided, the December 20, 1994 dismissal of Foster cannot stand.

■ We have previously held that where a school board has taken a personnel action without affording the required hearing, the remedy on appeal is remand for a hearing, not reinstatement. *Dicello v. Board of Directors of Riverside School District*, 33 Pa. Cmwlth. 39, 380 A.2d 944 (1977); *Department of Education v. Charleroi Area School District*, 22 Pa.Cmwlth. 56, 347 A.2d 736 (1975). Remand for a proper hearing, regardless of the result, insures the integrity of the administrative process. *Donnon v. Civil Service Commission*, 3 Pa.Cmwlth. 366, 283 A.2d 92 (1971).

Thus, we vacate the trial court's order and remand to the trial court with direction that the matter be remanded to the School Board to vacate its dismissal of Foster by resolution of December 20, 1994, effective December 21, 1994, and to give Foster a hearing after due notice thereof.

### ORDER

AND NOW, this 21st day of June, 1996, the October 23, 1995 order of the Court of Common Pleas of Allegheny County is vacated; the matter is remanded to the trial court with direction to remand to the Board of School Directors of Keystone Oaks School District to 1) vacate the dismissal of Thomas V. Foster and 2) to conduct a hearing, following notice thereof, consistent with this opinion.

Jurisdiction relinquished.

---

6. See our opinion in *Belle Vernon Area School District v. Gilmer*, 51 Pa.Cmwlth. 603, 415 A.2d 121 (1980) in which an appearance of bias was supported by the record and wherein we thus held that the matter should be heard de novo by the trial court.